BEHREND ET AL., APPELLANTS, v. THE STATE OF OHIO ET AL., APPELLEES.

[Cite as Behrend v. State (1977), 55 Ohio App. 2d 135.]

(No. 77AP-60—Decided October 20, 1977.)

*Messrs. Hasenflue & Drost* ind *Messrs. Behrend & Aronson,* for appellants.

*Mr. William J. Brown,* attorney general, and *Mr. Gene W. Holliker,* for appellees.

HOLMES, J. This matter involves the appeal of a judgment of the Court of Claims of Ohio. The facts which gave rise to this action, and to this appea, are as follows.

The appellants in this case are former students of the Ohio University School of Architecture in Athens, Ohio, who attended the university for the purpose of receiving

an accredited degree in architecture. However, in April of 1969, the School of Architecture lost its accreditation. Subsequent action was taken to get the school reaccredited, which included hiring a new director, improving the physical plant, and increasing the size of the faculty.

The appellants were repeatedly assured by members of the university's faculty and administrative personnel that if they attended the school and worked extremely hard they could obtain an accredited degree in architecture. According to the evidence, it would appear that on the strength of these assurances, the appellants attended and worked diligently, not only on their own projects, but in rehabilitating the physical plant.

In October of 1973, an accrediting committee of the National Architectural Accrediting Board (NAAB), known as the "Botsai Committee," visited Ohio University for the purpose of evaluating the School of Architecture for possible reaccreditation. At that time, the president of the university and members of the faculty made commitments to the "Botsai Committee" that the School of Architecture would continue to work toward accreditation, and would meet all of the prerequisites to receiving accreditation for the School of Architecture. Thereafter, the "Botsai Committee" informed the university that they would recommend a two-year accreditation to the NAAB board of directors. The evidence tends to show that it was the general feeling of all concerned that once the committee made a recommendation of this nature, it was virtually assured of being accepted by the full board, and accreditation granted.

Later, however, based on a significant decrease in student enrollment and rather severe budget constraints, a review of the budget for the College of Fine Arts and how such funds were to be allocated among the various schools within the college, including the School of Architecture, was made by the dean of the college and the budget and curriculum committees of the college. The fine arts and curriculum committees voted in 1974 to phase out the School of Architecture. The president of the university

approved the recommendation to phase out the School of Architecture.

The "Botsai Committee," upon learning of the university's plans to abolish the school, withdrew its initial recommendation to accredit *in toto*. The board of trustees of the university met in May of 1974, and voted unanimously to phase out the School of Architecture. After this resolution by the trustees, the school continued to function until all presently enrolled students could graduate if they so desired.

In June of 1975, appellants filed a complaint against Ohio University, its board of trustees and members of the university administration. The main thrust of the complaint was that the university and its agents had made various misrepresentations concerning the status of accreditation of the School of Architecture, and the anticipated reaccreditation of the school. In its answer, appellees denied all allegations of misrepresentation and included various affirmative defenses. Appellees propounded interrogatories upon the appellants, and all but three of them answered. These three, William S. Huntington, Augustine J. Palmieri, and Michael J. Kuhn, were dismissed by the trial court for failing to answer. The plaintiffs-appellants' counsel gave notice, ostensibly pursuant to Civ. R. 27, for the taking of videotape depositions for the purpose of perpetuating their testimony. The Court of Claims issued a protective order stating that the appellants had not complied with Civ. R. 27. When the case came to trial, plaintiff Michael Lang was dismissed at his request.

At the close of plaintiffs' case, Richard Border, Alfred J. Cornellio, Jr., Reinhard H. Friede and Peter I. Scaglione were dismissed by the trial court for failing to appear at trial and offer any proof as to their claims. The thirteen remaining plaintiffs appeared at trial and offered testimony. At the conclusion of the plaintiffs' case all defendants except Ohio University were dismissed. In relation to the liability of Ohio University, the trial court concluded that the university had not represented to the plaintiffs that the School of Architecture was accredited,

nor that it would be accredited at a future date. Accordingly, the trial court dismissed the case, and a judgment was entered for Ohio University. A motion for a new trial was overruled and the plaintiff students appealed to this court.

The appellants set forth the following assignments of error:

"1. The Court erred in dismissing Plaintiffs who had filed their Answers to Interrogatories but were not present in Court to testify.

"2. The Court erred in not finding that a contract existed between Ohio University and the students who are the Plaintiff-Appellants and that Defendants breached it.

"3. The Court erred in accepting that the Board of Trustees of Ohio University afforded due process to the students who are the Appellants in this matter when the Board of Trustees voted to phase out in May of 1974 the School of Architecture without considering the affirmations given by the officials and faculty of Ohio University to the students pertaining to accreditation of the School of Architecture, and without consideration of the effect upon the students' professional and educational careers before the Board of Trustees voted for a termination of the School of Architecture.

"4. The Court erred in not finding that the Ohio University and the other Defendants were responsible to the Student-Appellants in damages for misrepresentation and fraud.

"5. The judgment entered is manifestly against the weight of the evidence.

"6. The judgment is contrary to law.

"7 Other errors appearing in the record and objected to by Plaintiffs."

The first assignment of error alleges that the trial Court erred in not permitting the plaintiffs to present their case by way of videotape deposition, and further that the court erred when it dismissed certain of the plaintiffs when they had failed to appear for trial.

Plaintiffs did not at any time demonstrate any basis justifying substituting their depositions for oral testimony

in open court. At the commencement of the trial, counsel for plaintiffs did indicate that plaintiff Friede was in Switzerland; that plaintiff Cornelio was in Arizona; that plaintiff Scaglione was in San Francisco, but counsel had been unable to reach him but would continue to try to do so; and that plaintiff Border was in Texas and "probably would not arrive until tomorrow or Wednesday."

Plaintiffs in their brief herein contend that "those who answered their Interrogatories should have been allowed to present their cases by video-tape and * * * their presence at trial was not required." However, as noted, Civ. R. 32(A) (3) limits the circumstances under which a deposition may be substituted for oral testimony in open court. Since the four dismissed plaintiffs have failed to demonstrate any justification under Civ. R. 32(A)(3) for use of their depositions at trial, the order of the trial court with respect to depositions cannot constitute prejudicial error.

Although Civ. R. 32(A)(3) may, under proper circumstances, permit the use of a deposition of a party who resides outside the county in which the action is pending as a substitute for oral testimony in open court, the record does not reflect that plaintiffs at any time contended in the trial court that they were entitled to present their depositions as evidence upon that ground. Also, as noted, no depositions of the plaintiffs were taken even though the trial court's protective order did not prevent the taking of such depositions. The first assignment of error is not well taken, and is hereby dismissed.

The determination of the major issues presented in this case as set forth in assignment of error number two is, in the main, based upon the relationship which existed between Ohio University and these students. Generally it may be stated that when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature.

The specific nature of the contractual relationship may well vary with the specific situation presented. However, it may be said that where one enrolls in a college or

university in order to obtain instruction in a given professional discipline, he or she does so with the reasonable thought that such college or university has been accredited by the appropriate accrediting agency.

It is not unreasonable for one matriculating to an institution of higher learning, which offers course materials and degrees in a certain professional field, to assume that the credits for courses taken at such institution, and any degree thereafter that might be granted, would qualify the student or the graduate for the appropriate state professional examination.

Such is the situation presented here where Ohio University offered courses in architecture which looked to a degree in such professional discipline. Although the college had lost its accreditation in 1969, the staff of the college, as well as the dean, continued to convey the thought to these student plaintiffs that every effort would be made to again be accredited. In fact, the record will show that repeated statements were made by the staff and administration of the School of Architecture that there was no great problem in again being accredited.

Our holding that there was an implied contract by Ohio University with these student plaintiffs that the latter be provided accredited academic training is not saying that the board of trustees was powerless to discontinue certain educational school and departments pursuant to the determination of the board. The board of trustees has the jurisdiction to make the policy determination of the continued existence of the various departments within the universiy.

However, where a determination is made affecting those with whom the university had contracted, unless there is shown to be an impossibility of performance, the contract must be fulfilled, or damages awarded. Here, instead of showing an impossibility of performance, Ohio University proved that the College of Fine Arts, and then the board of trustees of the university, made a selection of academic goals and that the other departments in the College of Fine Arts were chosen to continue rather than the School of Architecture.

The holding here goes to the issue of whether a student may claim damages when the course materials he or she has taken, and hours of credit toward a degree, either are not acceptable to another school upon tranfer, because of the lack of accreditation, or when the student has graduated but may not take the professional exam without further work and delay, or when the student has been delayed in the process of his transferring to another college or university offering an accredited course in architecture.

The damages to these students will necessarily vary dependent upon whether or not they were able to transfer credits and, if not, the additional time and expense of taking other courses. Also, there will have to be proof of any pecuniary loss due to delay of those in transferring to other schools, and proof of loss of delay in being able to take the appropriate state professional exams. All of such must be proven by the individual claimant based upon the facts in his or her given case.

We hold, upon the facts as presented by these plaintiffs and contained with in the record herein, that assignments of error numbers two, five and six are well taken, and are hereby sustained.

As to the third assignment of error, in which the appellants raised the issue that they were denied due process, it is dismissed. State universities and colleges must be free to make the reasonable and necessary operating decisions inherent in the functioning of an institution of higher learning, without being encumbered with the necessity of conducting public hearing. The development and continuation of the university's courses of study should reside within the sound discretion of the university's board of trustees and the administrative officials.

As to assignment of error number four, we hold that the trial court did not err in finding that the appellees had not made any misrepresentation to these appellants, subject to review as in this instance.

The essential elements of a cause of action for fraud or misrepresentation were correctly stated by the trial court herein within its opinion, as follows:

"1. A false representation, actual or implied, or a concealment of a fact material to the transaction.

"2. The representation must relate to the present or past.

"3. Knowledge of the falsity of statements made with such utter disregard or recklessness as to truth or falsity that knowledge can be inferred.

"4. Intent to mislead another into relying on the representation.

"5. Reliance—with a right to reply.

"6. Injury as a result of such reliance."

The trial court's finding that the appellants failed to prove these elements is clearly supported by the record. The appellants' essential claim is that various faculty members and administrative officers of the university falsely stated that accreditation would be granted by the NAAB at some point in the future. There is no evidence in the record that these representations were untrue or made with any intent to mislead. It is our view that the faculty, and also the administrative officers of the School of Architecture, as well as the officials within the College of Fine Arts, made certain statements which seemed to be filled with optimism as to reobtaining accreditation of the School of Architecture, but such statements were only made with the honest enthusiasm of continuing such course of study on an accredited basis as such statements might reasonably have been made by any staff person of any other professional school. Assignment of error four is hereby dismissed.

There being no additional errors, other than referred to hereinbefore, assignment of error number seven is hereby dismissed.

Based on all of the foregoing, the judgment of the Court of Claims is hereby reversed, and this matter is remanded to such court for further proceedings according to this decision and pursuant to law.

*Judgment reversed.*

WHITESIDE and REILLY, JJ., concur.