SMITH *v.* OHIO STATE UNIVERSITY.

(No. 89-04566—Decided February 23, 1990.)

Court of Claims of Ohio.

*Steve J. Edwards,* for plaintiff.
*Anthony J. Celebrezze, Jr.,* attorney general, and *Mary J. Stepanic,* for defendant.

LEACH, J. In the fall of 1986, then thirty-two-year-old Robin Smith, plaintiff herein, enrolled in the Ohio State University School of Natural Resources ("OSU") to obtain a Master's Degree in Environmental Science. As a graduate student, plaintiff had the responsibility of choosing three faculty members to serve as his advisory committee, one of whom was to be designated as a personal advisor. Plaintiff chose Dr. Gary Mullins as his committee chairman and advisor. Dr. Judith Maxwell and Professor Thomas Stockdale, School of Natural Resources faculty members, served as the other committee members. Plaintiff formulated a plan of study with the aid of Dr. Mullins. Plaintiff decided on a program which required him to satisfactorily

complete classroom study and to research and write a thesis on a pertinent topic in his area of concentration. Over a period of time, he discussed numerous possible thesis topics with Dr. Mullins.

Initially, plaintiff sought to compile data from research which he proposed to perform at a national park. He ultimately decided to accept an employment position at Yellowstone National Park ("Yellowstone") for that purpose. Plaintiff stated that in April 1987 he informed Dr. Mullins of his decision to visit Yellowstone during the approaching summer and discussed what he hoped to accomplish.

When plaintiff subsequently arrived at Yellowstone, he was informed by park officials that he was not allowed to engage in research at the park without a permit. The park required that plaintiff demonstrate that he would engage in bona fide research, such as the writing of a thesis. Plaintiff had not submitted a thesis proposal to his committee at OSU, and so could not obtain the requisite permit. Thereafter, plaintiff approached officials at Yellowstone to obtain employment. The Yellowstone employment experience was not something plaintiff required to be more "employable." His primary intention, prior to arrival, was to perform research and collect data for this thesis. He assumed the duties of a park ranger for the summer in exchange for room and board. His employment responsibilities required most of his time and, therefore, he was unable to collect data while working at Yellowstone.

Plaintiff returned to OSU in the fall of 1987. He met with, and submitted a thesis proposal to, his committee. He then obtained the required documentation and returned to Yellowstone to collect data for his thesis. Over the Thanksgiving holiday, he visited OSU to meet with his commit-

tee and to discuss his progress. He then went back to Yellowstone to complete his work and returned home around Christmas to start writing his thesis. He spent the winter quarter of 1988 compiling data and drafting his paper. At the end of winter quarter, plaintiff sought the advice of his committee members. Plaintiff stated he was displeased with their advice and lack of cooperation. Subsequently, he formed a new committee of faculty members in May 1988. He was able to work with his new committee members to his satisfaction. Plaintiff completed his thesis and graduated in December 1988.

On February 17, 1989, plaintiff filed a complaint in this court alleging that defendant, the Ohio State University, breached a contract and was negligent in its advice and guidance concerning plaintiff's Master's Degree program. This cause came on for trial on November 20, 1989. The parties presented evidence, testimony and arguments as to the facts and issues involved herein. Upon consideration of the record, the court renders the following decision.

Plaintiff contends that, had he been advised about the procedures required to do a research project at Yellowstone, he would have graduated three months earlier. Plaintiff alleges that the inadequate advice he received caused him to squander his time during the summer of 1987 working as a ranger instead of gathering data for his thesis. Also, plaintiff asserts that if he had been informed about the requisite permit, he would have obtained one before departing OSU. As a result, plaintiff seeks damages for three months' lost wages because of his delayed entry into the job market. He also seeks reimbursement of one quarter's tuition based upon his belief that he received inadequate or virtually no guidance during said winter quarter.

Plaintiff's allegations of breach of contract and negligence are evidently intertwined as both pertain to defendant's alleged failure to provide him with timely advice and guidance in researching and drafting of his Master's thesis. The court agrees with plaintiff's assertion that his relationship with OSU was contractual. "* * * Generally it may be stated that when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature." *Behrend* v. *State* (1977), 55 Ohio App. 2d 135, 139, 9 O.O. 3d 280, 282, 379 N.E. 2d 617, 620. The terms of such contract are set forth in the college catalog and handbook which are provided to students. Thus, plaintiff's theory is that he paid a fee for an educational experience. Since he did not receive proper counseling by his thesis committee, there was a breach of that educational contract. Under contract law, "unless there is shown to be an impossibility of performance, the contract must be fulfilled, or damages awarded.* * *" *Id.* at 140, 9 O.O. 3d at 283, 379 N.E. 2d at 621.

As to allegations of negligence, it is axiomatic that plaintiff has the burden of proof to show, by a preponderance of the evidence, the existence of a duty, a breach of the duty, and damages proximately resulting therefrom. *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 47 O.O. 2d 282, 247 N.E. 2d 732.

At trial, faculty members from OSU offered testimony pertaining to graduate study programs, the necessary procedures to be followed in order to graduate and their knowledge and involvement in plaintiff's situation. The testimony elicited at trial presented a clear picture of a communications breakdown between plaintiff and the pertinent faculty members.

As set forth above, Dr. Mullins and plaintiff had discussed various topics for the thesis. Dr. Mullins testified that he and plaintiff had talked about the trip to Yellowstone, but that it was his understanding and belief that a topic was not formally presented as a basis for research during plaintiff's visit. Dr. Mullins believed that plaintiff was at Yellowstone to seek additional experience, gather information and affirmatively decide on a topic to present for consideration at the end of the summer. Dr. Mullins stated that plaintiff did not submit a proposal for his thesis prior to his departure to Yellowstone. In considering plaintiff's testimony in this regard, it is obvious that the parties' understandings of the circumstances were not congruent.

Dr. Mullins reviewed plaintiff's thesis toward the end of the 1988 winter quarter and offered suggestions. Plaintiff was not entirely receptive to his ideas. Dr. Mullins instructed plaintiff to speak with the other committee members, Dr. Maxwell and Professor Stockdale, to obtain their viewpoints. Dr. Maxwell informed plaintiff that due to time commitments and her recent health problems she would be unable to review his thesis and would also have to withdraw as a member of his committee. Professor Stockdale told plaintiff that he viewed his position on the committee as the "last reader" of the thesis and therefore believed he should not prematurely review it. Plaintiff then continued to rework his thesis. During approximately the fifth week of the spring quarter, plaintiff met with Dr. Mullins and they mutually agreed to Dr. Mullins' withdrawal from the committee.

Defendant produced evidence that plaintiff received adequate advice and guidance while working on his thesis. Also, students in graduate school are not limited to committee members for advice. Instead, a variety of faculty members are available for consultation

purposes. The court concludes that plaintiff was hampered only by his own failure to make reasonable inquiry.

It is clear from the evidence that Dr. Mullins, Dr. Maxwell and Professor Stockdale had numerous years of experience participating as committee members for various students. Due to the nature of the thesis process, a graduate student preparing his paper has much autonomy. A student must take responsibility for his actions or inactions during such a period of time. Plaintiff had the option of seeking advice from other faculty members, but chose not to do so. It should be noted that plaintiff is a very intelligent person and most certainly has the ability to pursue alternatives when he is faced with a perceived problem. He earned an undergraduate degree and taught school for a number of years. Therefore, he was quite familiar with educational systems. He could have approached other faculty members at any time, especially when there was a communications problem between himself and Dr. Mullins.

It is clear from the submitted evidence that, at all relevant times, he had the option of changing his advisors. It appears, however, that plaintiff delayed the completion of his thesis by choice, since he did not take such action. After he and Dr. Mullins met at the end of winter quarter and disagreements arose, he decided to wait until the fifth week of spring quarter before taking action, i.e., changing committee members. Plaintiff had access to the pertinent student handbook and graduate bulletin and, as terms to the contract, had the responsibility to understand their contents. These reference books provide information about the student's course of study, time tables for the student's program and the school's and student's responsibilities. It is clear from the information contained in these books that plaintiff was able to change his advisor

or committee members at any point in time.

Upon review of the evidence and testimony in this case, it is the court's opinion that plaintiff has failed to show by a preponderance of the evidence that defendant acted negligently or breached the contract between them. The court finds that the obstacles which plaintiff faced for the completion of his Master's thesis were not unusual and, considering his options, did not present him with an insurmountable burden. The central focus of this case concerns plaintiff and Dr. Mullins. As previously mentioned, there was a communication problem between the two individuals. Plaintiff may have believed he was visiting Yellowstone to do research on a particular thesis topic, but there was no justification for such a belief. In addition, disagreement pertaining to the thesis does not lead to the conclusion that insufficient advice or guidance was received by plaintiff. When plaintiff believed he was receiving inadequate guidance concerning his thesis, he merely waited a number of weeks to inquire about forming a new committee. Thus, he did not react in a manner which would indicate that he was overly concerned. Plaintiff did not take advantage of, or pursue, other avenues when confronted with the alleged roadblock.

In view of the above, the court finds that the totality of the evidence favors defendant. Plaintiff has not shown that defendant was negligent or that it breached the contract between the parties. Therefore, the court hereby renders judgment for the defendant, OSU. Court costs are assessed against plaintiff.

*Judgment for defendant.*

Russell Leach, J., retired, of the Franklin County Municipal Court, sitting by assignment.