ELLIOTT, Appellant,

v.

UNIVERSITY OF CINCINNATI, Appellee.

[Cite as *Elliott v. Univ. of Cincinnati* (1999), 134 Ohio App.3d 203.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–754.

Decided June 29, 1999.

204

*Rose Ann Fleming,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Susan C. Walker,* Assistant Attorney General, for appellee.

BOWMAN, Judge.

Appellant, Scott Elliott, filed a notice of appeal from a judgment of the Ohio Court of Claims finding in favor of appellee, the University of Cincinnati ("UC"). Appellant filed an action against UC, alleging breach of contract, promissory estoppel, negligence, and failure of due process. Appellant requested an injunction to cancel and rescind his discharge from UC, and to permit appellant to transfer to another accredited program or return to the College Conservatory of Music ("CCM"). Appellant also sought compensatory and punitive damages, and attorney fees. The Court of Claims struck appellant's claim for punitive damages

and attorney fees. The Court of Claims also dismissed appellant's constitutional claims for a lack of jurisdiction. The Court of Claims then bifurcated the trial to separate the issues of liability and damages.

After a trial, the Court of Claims rendered judgment in favor of UC, finding that UC did not depart from academic norms or act in an arbitrary or capricious manner. Thus, the court gave deference to appellee's academic decisions and found that appellee did not breach its contract with appellant. Appellant has filed a notice of appeal and raises the following assignments of error:

I. Appellant's First Assignment of Error

"The Court of Claims erred in failing to apply principles of contract law to the facts of the record to determine whether defendant breached its contract in effect at the time of plaintiff's enrollment, and instead inappropriately relied upon the doctrine of academic deference."

II. Appellant's Second Assignment of Error

"The Court of Claims erred in failing to find that the defendant committed multiple breaches of its contract with the plaintiff by departures from its own rules and regulations in effect at the time of the plaintiff's enrollment, including the following: (1) changing course requirements in the history of music; (2) adding a special eight–hour written examination focused on a level of Schenkerian analytic notation not in effect at the time of plaintiff's enrollment, but used as a basis of the oral examination; and (3) basing its evaluation of Mr. Elliott's performance on the oral reexamination on the vote of four faculty members, not five as mandated by the *bulletin* and *graduate student handbook*." (Emphasis *sic.*)

III. Appellant's Third Assignment of Error

"The Court of Claims abused its discretion in not finding that the behavior of the defendant was arbitrary and capricious because it singled plaintiff out from his peers and treated him differently to his detriment, contrary to reason and professional conduct."

This case is particularly governed by the facts and circumstances unique to these parties, and, therefore, a detailed statement of the facts is included. Beginning in September 1987, appellant, Scott Elliott, attended classes at CCM at UC. He was working toward a Ph.D. in music theory, with a minor, or cognate, in aesthetics. He resided at UC and took classes through August 1990. He was on a full scholarship, which was renewable each year for a maximum of three years or two hundred credit hours.

Doctoral students were required to complete classes and precandidacy requirements within five years. The precandidacy requirements included both a qualify-

ing exam and a comprehensive exam. The qualifying exam is a written exam consisting of two sections: music theory, and music history and literature. Regardless of their major, all doctoral students take the same qualifying exam.

After passing the qualifying exam, a student is required to pass a comprehensive exam. The comprehensive exam consists of both a written portion and an oral portion. A student is required to pass the written portion before the oral portion may be scheduled. The purpose of the comprehensive exam is to test the competence of the student in both his major and cognate fields of study to determine whether the student is prepared to conduct independent research and to teach the subjects at a college or university level. Once a student passes the comprehensive exam and becomes a doctoral candidate, a dissertation proposal must be submitted for approval. The dissertation must then be written and successfully defended in order to receive a Ph.D.

Appellant received three extensions of time to complete his precandidacy requirements. With the extensions, he had until June 1994 to complete his requirements. Appellant scheduled his qualifying exam in the fall of 1991, and passed the music history and literature section but failed the music theory section. He scheduled a second exam for October 1992, and passed the music theory section. Professor Zierolf, the division head of composition, theory, music history, and literature departments at CCM, testified that appellant is the only music theory doctoral student that he can remember to fail the music theory section of the qualifying exam.

Appellant scheduled and passed the written portion of the comprehensive exam in October 1993. The written portion of the exam consisted of two parts: a six-hour exam and an eight-hour exam on Schenkerian analysis ("Schenker exam"). He scheduled the oral portion of the exam for November 22, 1993. Professors Robinson, Wheaton, Neff, Zierolf, and Nowacki constituted the oral examination committee. Appellant passed the history of music theory section of the oral examination but failed tonal theory (Schenker analysis), atonal theory (twentieth century) and aesthetics of music by a unanimous vote of the examining committee.

Appellant scheduled his oral re-examination for May 23, 1994. Ordinarily, the comprehensive exams are not scheduled during spring quarter, but CCM made an exception for appellant because his deadline for completing the precandidacy requirements was June 1994. Appellant again took the Schenker exam, which was not graded, but merely used as a basis for questioning during the oral re-examination. The same professors constituted the committee for appellant's oral re-examination. On the day of the oral re-examination, Professor Neff had a dental emergency and could not attend the re-examination. The re-examination proceeded, and appellant again failed tonal theory (Schenker analysis), atonal

theory (twentieth century), and aesthetics of music. Appellant needed three of the four votes to pass. Professor Robinson abstained from voting and Professors Zierolf, Wheaton, and Nowacki voted to fail appellant on all three subjects. Appellant was then dismissed from CCM.

Appellant's first and second assignments of error are related and will be addressed together. Appellant argues that the Court of Claims erred because it ignored appellant's property interest that resulted from the contract between appellant and appellee, which was breached when appellee violated its own rules as set forth in the UC Bulletin ("bulletin"), and CCM Graduate Student Handbook ("handbook") in effect at the time he matriculated in 1987. In *Bleicher v. Univ. of Cincinnati College of Med.* (1992), 78 Ohio App.3d 302, 604 N.E.2d 783, this court stated that the standard of review is not whether this court would have decided the matter differently, but, rather, whether the faculty action was arbitrary and capricious. This court also found that the trial court was required to defer to academic decisions of the college unless it is perceived that there existed " 'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.' " *Bleicher,* at 308, 604 N.E.2d at 787, quoting *Regents of the Univ. of Mich. v. Ewing* (1985), 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523, 532.

In *Bleicher,* a medical student was dismissed for failing to meet the academic requirements. This court determined that the nature of the relationship between the student and the university is contractual in nature. "It is axiomatic that ' * * * when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature.' " *Bleicher,* at 308, 604 N.E.2d at 787, quoting *Behrend v. State* (1977), 55 Ohio App.2d 135, 139, 9 O.O.3d 280, 282, 379 N.E.2d 617, 620.

There is no dispute that a contractual relationship exists between the parties, only whether a breach of contract occurred. Appellant's primary argument is that CCM changed its policies and procedures after he matriculated but before he took his exams. There are three major changes that form the basis of appellant's complaint. First, beginning in 1990, the History of Music Theory course was changed from a one-year (three-quarter) course to a two-year (six-quarter) course. Second, appellant was required to take the Schenker exam in addition to the six-hour written exam as part of the written portion of the comprehensive exam. Third, appellant only had four faculty members test him during his oral re-examination rather than five.

The History of Music Theory course was not offered during appellant's second year, and, although he scheduled the course for his third year of study, he

was unable to take the second half of the course because he had reached the maximum number of years for his scholarship money and he moved from the Cincinnati area to seek employment. He scheduled an independent study with the professor during his last summer quarter, but the professor was unable to accommodate him. He also attempted to receive a course syllabus for the second half of the course but was unsuccessful. Appellant claims that he needed to study for two years to learn the material that was taught during the second half of the History of Music Theory course and that by focusing on that course he was forced to seize time and energy from the other topics that were tested. Also, he testified that approximately half of his comprehensive exam included material that was taught during the second half of the course, during quarters four through six. Appellant testified specifically that, for the first question on the written portion of his comprehensive exam, he was required to write about six of the ten music theorists that were listed. Four of the ten theorists listed were taken from the second half of the History of Music Theory course. Despite these difficulties, appellant passed the history of music theory portion of the comprehensive exam; however, it was the only portion he passed.

Appellant contends that, because the History of Music Theory course was changed and he was unable to take the second half of the course while at CCM, he should not have been examined on any material from that second half of the course. Appellant's expert testified that some of the material on the comprehensive exam required either a course in the history of music theory or substantial reading in the area to be able to answer reasonably at the level of a comprehensive exam.

Professor Zierolf testified that the exam was specifically written and structured for appellant and took into consideration appellant's concerns about the second half of the course. The twentieth century theorists included in the exam were theorists that appellant should have known from other courses, not only the History of Music Theory course. For example, Allen Forte was the author of books on Schenkerian analysis and Milton Babbitt is the principal theorist for atonal theory, both of which were topics for the exam. Zierolf also testified that the exam was not course-content-based because all courses evolve over time and, at the Ph.D. level, the knowledge necessary to prove competence in these subjects is gleaned more from study outside of class than in class. Zierolf stated that the Ph.D. program and requirements in music theory did not change, merely the specific courses had changed.

A second change that appellant contends is a basis for the breach-of-contract action is that he was required to take the eight-hour Schenker exam in addition to the six-hour comprehensive exam, which focused on Schenkerian analysis. Schenkerian analysis is a method of analysis for tonal music developed

by Heinrich Schenker. It is also called linear analysis or layer analysis. When applied to a given work, Schenker's analytical techniques attempt to reveal tonal relationships by their intrinsic linear connections in a hierarchy of structural levels or layers. The analysis includes specific terminology and a special graphic style using ordinary musical notation supplemented by explanatory remarks. See The New Harvard Dictionary of Music (7 Ed.1986) 730–732. Appellant argues that he should not have been required to take the Schenker exam and that it should not have been used as a basis for questioning during his oral examination because he was held to a different standard and level of Schenkerian analysis than he had been taught by Professor Komar, who retired and was replaced by Professor Wheaton in 1990.

The handbook describes in detail the written comprehensive exam as follows:

"The length of the written examination is established by the major area faculty and varies according to majors. The minimum length is three hours, and this is the length of the written examination in all applied music performance areas. A six-hour examination (two three-hour sessions) is administered to Ph.D. students * * *."

Professor Wheaton testified that the eight-hour Schenker exam evolved to give the student more time to take the exam. Originally, only a six-hour written exam was required for the written portion of the comprehensive exam and Schenkerian analysis was included as a test topic within those six hours. Zierolf testified that the Schenker exam evolved due to complaints by students about having insufficient time to complete the exam. The professors then decided to remove the most difficult subject (Schenkerian analysis) from the six-hour exam and provide the students more time in which to complete it by having the subject covered during its own eight-hour exam. Therefore, students still took the six-hour exam but were given eight additional hours to complete the most difficult part of the exam.

Appellee presented evidence that CCM expected Ph.D. students to study on their own beyond any courses taken and that the comprehensive exam was not course-content-based. Zierolf testified that course work alone is insufficient preparation for the comprehensive exams. Zierolf also testified that appellant had more courses in Schenkerian analysis than most of CCM's students. Zierolf testified that the handbook permits CCM to require another exam in addition to the six-hour written exam because the handbook provides that the length of the written exam is established by the major area faculty and the minimum time is six hours. Zierolf testified that, since the handbook does not require "no more or less" than six hours, the test may be longer than six hours.

■ Additional testimony demonstrates that appellant was not at a disadvantage by having to take either Schenker exam. Zierolf testified that the six-hour written exam and the Schenker exam were two separate parts of one written comprehensive exam. Students were required to pass the written portion of the comprehensive exam before taking the oral examination. Therefore, appellant had passed both the six-hour written exam and the Schenker exam before he took the oral examination. He was required to take a second Schenker exam before his oral re-examination merely to give the committee a basis for questions during the oral re-examination because the first Schenker exam had been thoroughly discussed during the first oral examination. Appellant's second Schenker exam was not graded.

Appellant also contends that he was at a disadvantage because Professor Wheaton's method of Schenkerian analysis was different from the method he had been trained in by Komar.[1] Professor Wheaton testified that he did not expect appellant to conform to his ideas concerning Schenkerian analysis. Wheaton testified that, while a notation style in doing a Schenkerian analysis may be somewhat peculiar to a certain professor, a basic essence of analytical symbols is the same, regardless of the teacher. The associate dean of academic affairs, Warren George, testified that a student is expected to know all aspects of any given theory. Zierolf testified that appellant was permitted to disagree with any professor or technique, but had to convincingly support his arguments at the oral examination. The main concern of the committee was that appellant could not verbalize and defend his technique. Zierolf testified that the requirements for a Ph.D. in music theory had not changed and that appellant was tested in the same music theory subjects that were required when he matriculated in 1987.

■ Also, appellant was not damaged because he passed his first Schenker exam and the second Schenker exam was not graded. There was no evidence provided that either oral examination was composed of only Schenkerian analysis questions or that he would have passed the other two subjects of the oral examination, atonal theory (twentieth century) and aesthetics of music, if the written Schenker exams were not required. Providing the students with eight additional hours to take an exam and composing the questions during the oral examinations are items that fall within the range of academic decision-making and are entitled to due deference by this court.

---

1. Appellant trained in Schenkerian analysis under his advisor Professor Komar until the professor became ill and retired. Professor Komar had a more theoretical approach to Schenkerian analysis than Professor Wheaton, who replaced him. The two professors apparently had different opinions and styles of notations.

█ A third change that appellant contends is a basis for the breach-of-contract action is that the committee of professors who conducted his comprehensive oral re-examination in June 1994 was composed of only four members, rather than five as mandated by the bulletin and the handbook. The bulletin provides:

"The major area examinations are administered by the major area faculty and are in two parts. The first part is a written examination * * *. The second part is an oral examination which is taken upon successful completion of the written exam. The committee structure for the oral exam is as follows:

" * * *

"PhD: Four faculty members from history/literature, theory, and one from the cognate area."

The handbook provides the following information concerning the oral examination:

"Upon successful completion of the written examination, the student is eligible to proceed with the second part of the candidacy examinations which is a two-hour oral examination. The committee structure for the oral examination is as follows:

" * * *

"Ph.D.: Four faculty members from history/literature and theory (three from the emphasis area) and one from the cognate area.

"The oral examination is graded on a pass/fail basis, and two-thirds of the committee must vote to pass the examination in order for the requirement to be fulfilled. (The two-thirds rule translates into three passes with a four-person committee and four passes with a five-person committee.) * * *."

Appellee's witnesses testified that appellant did not object when he was told that the committee would consist of only four members rather than five. Appellant testified that he was not given a choice. In *Bleicher,* 78 Ohio App.3d at 308, 604 N.E.2d at 787, this court stated that, "[i]n addressing the issue of whether such contract has been breached, the trier of fact appropriately looks to the terms of the contract as found in the college guidelines supplied to students." Here, the contract specified five members for the oral examination board, but there were only four present to administer the re-examination to appellant. Dean George testified that having only four members on the committee is a departure from the optimum; however, it was not the only time a committee had proceeded with only four members because of extenuating circumstances. An oral examination had never been postponed due to a student requesting five members, although a student has a right to do so. There is no evidence that the bulletin or handbook contains a provision for proceeding when there are fewer

than five faculty members or that a student has the right to demand a continuance until there are five faculty members present. Neither the bulletin nor the handbook provides information as to the circumstances and requirements to pass if a faculty member abstains from voting. Under these circumstances, where appellant was faced with his last chance to pass the oral portion of the comprehensive exam, it is not unreasonable that he did not object to the make-up of the committee. In this case, the action of CCM in proceeding with the oral re-examination with a committee consisting of only four members when appellant was informed that the committee would contain five members is a breach of the contract. Thus, appellant's first and second assignments of error are well taken only to this extent.

By the third assignment of error, appellant contends that the Court of Claims erred in failing to find that appellee's behavior was arbitrary and capricious because it singled appellant out from his peers and treated him differently to his detriment, contrary to reason and professional conduct. Appellant contends that two other students who matriculated before him but were taking classes at the time he was did not have to take any Schenker exam, but merely the six-hour written exam, which included Schenkerian analysis as a topic. However, these students matriculated before appellant and would be held to different standards. Appellant testified that he was the only Ph.D. student in music theory who matriculated in 1987. Although CCM breached its contract with appellant, it did not single him out from his peers and treat him differently to his detriment as to the Schenker exam. There was evidence that a student who matriculated a year after appellant was required to take the Schenker exam. Thus, appellant was not treated differently from his peers. Appellant's third assignment of error is not well taken.

For the foregoing reasons, appellant's first and second assignments of error are sustained in part and overruled in part, and appellant's third assignment of error is overruled. The judgment of the Ohio Court of Claims is reversed, and the cause is remanded with instructions to that court to fashion a remedy whereby appellant may retake the oral portion of the comprehensive exam under the conditions provided in the bulletin and the handbook because he has already passed the written portion of the comprehensive exam, and to determine what, if any, damages are appropriate.

*Judgment reversed*
*and cause remanded*
*with instructions.*

BROWN and JOHN C. YOUNG, JJ., concur.

JOHN C. YOUNG, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.