**CORNETT**

v.

**MIAMI UNIVERSITY.**

Court of Claims of Ohio.

No. 98–08048.

Decided Jan. 27, 2000.

*Michael D. Shanks* and *Timothy R. Evans;  Herd Bennett;*  and *Charles E. Crowley,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Randall W. Knutti,* Assistant Attorney General, for defendant.

J. WARREN BETTIS, Judge.

Plaintiff James A. Cornett filed this action against defendant Miami University for damages arising out of his suspension from the university. Trial was bifurcated and tried to the court on the sole issue of defendant's liability.

Plaintiff enrolled as an undergraduate student at defendant university in August 1993. By the fall term of 1996, plaintiff had earned one hundred of the one hundred twenty credit hours needed for graduation. Plaintiff had planned to

apply to medical schools upon graduation and eventually to become a pediatric anesthesiologist. Plaintiff was also a participant in a university-sponsored child-mentoring program known as the "Big Friends Program."

On October 21, 1996, plaintiff was questioned by Miami University Police about allegations of sexual abuse made against him by two minors. The next day, plaintiff was arrested and charged with gross sexual imposition. Thereafter, defendant notified plaintiff that he was in violation of defendant's code of student conduct and that he was summarily suspended pending a disciplinary hearing. A hearing was held before defendant's disciplinary board on December 4, 1996. As a result of the hearing, plaintiff was found "responsible" for violations of Section 103 of the code of student conduct prohibiting physical and mental abuse or harm, and Section 110 relating to other violations of the law. The board recommended that plaintiff be dismissed from the university without the right to reapply. Susan Vaughn, defendant's Director of Judicial Affairs, agreed with the board's recommendation. Plaintiff then appealed to the university's appeals board. In a correspondence dated March 18, 1997, Dr. Agustis Jones, Chair of the Appeals Board, modified plaintiff's penalty as follows: "If Mr. Cornett is acquitted of all criminal charges relating to these events, then our penalty is hereby modified to convert the dismissal to a suspension which ends on the date of his acquittal."

Plaintiff was ultimately tried in the Butler County Common Pleas Court on the criminal charges and was acquitted. On August 14, 1997, plaintiff's attorney wrote Dr. Jones, informing him of plaintiff's acquittal. In that correspondence, plaintiff's attorney stated: "I expect all records of Mr. Cornett will be so modified to reflect termination of his suspension and a complete reinstatement to the university with all appropriate privileges as provided by Ohio Revised Code Section 3345.23(E)."

In a letter dated August 27, 1997, Vaughn responded to the request of plaintiff's attorney as follows:

"By copy of this letter, I am informing you that the condition of the Appeals Board decision have been met and there is no longer a disciplinary hold on your ability to register for classes at Miami University. Your suspension ended on August 7, 1997, the date of your acquittal."

Plaintiff did not register for any classes at the university. However, plaintiff did request a transcript from defendant for the purpose of applying to the University of Tennessee Martin. Plaintiff's transcript revealed grades of "incomplete" in two of the four classes in which he had enrolled the semester of his suspension, and a "withdraw failing" for the other two classes. These four courses, a total of fourteen credit hours, reduced plaintiff's cumulative grade-point average from 2.45 to 2.107. Additionally, under the heading "transcript

remarks," plaintiff's transcript contains a notation: "8/28/97 nonacademic suspension 12/4/96 through 8/7/97."

Plaintiff subsequently brought this action alleging that defendant's failure to expunge his academic records and the reduction of his cumulative GPA, due to courses he was unable to complete because of the suspension, adversely affected his ability to attend the medical school of his choice. Plaintiff also seeks recovery of the sums paid on his behalf for courses that he was unable to complete because of the suspension.

It is well recognized that when a student enrolls in a college or university, pays his or her tuition and fees, and attends the school, the resulting relationship is construed as contractual in nature. *Behrend v. State* (1977), 55 Ohio App.2d 135, 139, 9 O.O.3d 280, 282–283, 379 N.E.2d 617, 620. The terms of the contract between the university and the student are generally found in the college catalog and handbooks applied to students. *Embrey v. Cent. State Univ.* (Oct. 8, 1991), Franklin App. No. 90 AP–1302, unreported, 1991 WL 224228; *Smith v. Ohio State Univ.* (1990), 53 Ohio Misc.2d 11, 13, 557 N.E.2d 857, 859–860. However, where the contract permits, the parties may modify the terms by mutual agreement. *Ottery v. Bland* (1987), 42 Ohio App.3d 85, 87, 536 N.E.2d 651, 654–655. See, also, *Bleicher v. Univ. of Cincinnati College of Medicine* (1992), 78 Ohio App.3d 302, 604 N.E.2d 783. In this case, the terms of plaintiff's contract with defendant are set forth in the code of student conduct that was admitted into evidence as plaintiff's Exhibit 1. Plaintiff does not allege that defendant violated any of the specific provisions of the code in handling his suspension and reinstatement. Rather, plaintiff claims that defendant violated the agreement as modified by the letter from Dr. Jones. Specifically, plaintiff claims that defendant was obligated to expunge any reference to his nonacademic suspension from his university records and to adjust his cumulative grade-point average after his acquittal. The court disagrees.

By Dr. Jones's letter of March 18, 1997, defendant agreed to convert plaintiff's dismissal to a suspension ending on the date of his acquittal of the criminal charges. Dr. Jones's letter does not speak to expungement and does not address the issue of plaintiff's cumulative grade-point average. Plaintiff's academic transcript correctly states that plaintiff's nonacademic suspension terminated on August 7, 1997, the date of his acquittal of the criminal charges.

In consideration of all of the documentary and testimonial evidence submitted in this case, the court concludes that defendant was not obligated to delete any reference to plaintiff's suspension from his academic records or readjust plaintiff's GPA. Defendant agreed to lift plaintiff's suspension, effective on the date of his acquittal, and to reinstate his status as a student. Plaintiff's transcript and defendant's letter of August 27, 1997, established that defendant met its contrac-

tual obligations to plaintiff. In short, plaintiff has not proven by a preponderance of the evidence that defendant breached the parties' agreement.

■ Plaintiff has also brought an equitable claim alleging that defendant is estopped from refusing to expunge his records and adjust his grade-point average upon acquittal. However, as stated above, the relationship between plaintiff and defendant is clearly contractual in nature. Therefore, estoppel is not available to plaintiff under these circumstances. See *Gallant v. Toledo Pub. Schools* (1992), 84 Ohio App.3d 378, 616 N.E.2d 1156.

■ Plaintiff next contends that defendant's abandonment of disciplinary proceedings brought pursuant to R.C. 3345.24, in favor of proceedings under defendant's own code of conduct, violated plaintiff's statutory rights. The court disagrees.

R.C. 3345.24 provides:

"(A) Sections 3345.22 and 3345.23 of the Revised Code shall be applied and followed, notwithstanding any rule, regulation, or procedure of the college or university, but such sections shall not be construed to limit any duty or authority of the board of trustees, administrative officials, or faculty of such college or university to take appropriate disciplinary action, through such procedures as may be provided by rule, regulation, or custom of such college or university, against students, faculty or staff members, or employees, nor shall such sections be construed to modify, limit, or rescind any rule or regulation of the college or university not inconsistent therewith.

"(B) *Sections 3345.22 and 3345.23 of the Revised Code shall not be construed as modifying or limiting the duty or authority of the board of trustees or president of a college or university to summarily suspend a student,* faculty or staff member, or employee, when necessary to preserve the good order and discipline of such college or university, *provided that the person suspended is given notice of suspension and the reasons therefor, and is afforded a fair and impartial hearing within a reasonable time thereafter, under regular procedures of the college or university.* The duty and authority of the board of trustees or president of a college or university to impose summary suspension shall not be abrogated or limited in any way by any rule or regulation." (Emphasis added.)

Plaintiff argues that once "3345 proceedings" are commenced against a student, those proceedings must continue to a conclusion. In addition, plaintiff argues that if those proceedings had not been terminated in favor of proceedings under the university's own code of conduct, he would have been entitled to an automatic expungement of his suspension under R.C. 3345.23. R.C. 3345.23(E) provides:

"If a final judicial determination results in an acquittal, or if the conviction is reversed on appeal, the student, faculty or staff member, or employee shall be reinstated and the college or university shall expunge the record of the student's, faculty or staff member's or employee's dismissal from the student's, faculty or staff member's, or employee's college or university records, and the dismissal shall be deemed never to have occurred."

Contrary to plaintiff's assertion, there is no requirement in the language of R.C. Chapter 3345 requiring defendant to continue and exhaust procedures outlined in R.C. 3345.24, in every instance when those proceedings are initiated. In the view of the court, the language of R.C. 3345.24(B) clearly permits the university to proceed under its own internal code of conduct as long as the code is not inconsistent with statutory provisions.

■ Plaintiff next argues that defendant's code is inconsistent with R.C. Chapter 3345 because it neither provides for an automatic expungement upon an acquittal of any criminal charges nor expressly prohibits a student's testimony at a disciplinary hearing from being used against him in a subsequent criminal proceeding. The fact that the code and the statute provide different procedures does not make for inconsistency. Although defendant's code is not identical to the statute, both the code and the statute permit a summary suspension of a student following an arrest and reinstatement upon acquittal. Moreover, Dean Nault testified that defendant considers expungement on a case-by-case basis upon the request of a student. Thus, the court finds that defendant's code is not inconsistent with R.C. Chapter 3345.

*Judgment for defendant.*

J. WARREN BETTIS, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.