14

**ORGANISCAK**

v.

**CLEVELAND STATE UNIVERSITY.**

Court of Claims of Ohio.

No. 99–08785.

Decided Aug. 28, 2001.

*Walter & Haverfield, Christopher L. Gibbon* and *Susan M. Zidek,* for plaintiff.

*Betty D. Montgomery,* Attorney General, *Susan M. Sullivan* and *Eric J. Rosenberg,* Assistant Attorneys General, for the state.

EVERETT BURTON, Judge.

The issues of liability and damages were bifurcated and a trial was held on the sole issue of liability. In her complaint, plaintiff, Kari–Ellen Organiscak, alleges that she was wrongfully terminated from the graduate speech and language program of defendant Cleveland State University.[1]

---

1. On November 13, 2000, plaintiff dismissed her claim for promissory estoppel.

In August 1993, plaintiff began taking courses in defendant's Department of Speech and Hearing with the goal of earning a master's degree with a specialization in speech-language pathology. In her first quarter, plaintiff earned a grade of "B" in two courses and a grade of "B-minus" in another. In June 1994, at the conclusion of her first academic year, plaintiff received a second grade of less than "B" and she was placed on "academic warning." In January 1995, plaintiff was again notified that she was on academic warning after receiving a "C" during the fall quarter of 1994. Plaintiff remained on academic warning after she received a second grade of "C" in 1995 during the winter quarter in which she earned a 3.04 cumulative grade point average.

Due to her academic status, plaintiff was required to obtain special permission before she could register for an advanced clinical practicum in speech-language pathology. Although plaintiff's academic advisor counseled her against registering for the clinical practicum in the spring of 1995, she did receive permission to enroll from Dr. Gene Abkarian, Chairperson of the Department of Speech and Hearing. Plaintiff initially received a grade of "incomplete" in the course, which was later changed to a "B-minus." On September 15, 1995, plaintiff was notified by letter that the clinical supervisory staff had recommended her for academic dismissal based upon "departmental guidelines." The dismissal letter also informed plaintiff that she could petition for readmission after one calendar year and that the department may consider a petition for earlier readmission under "extreme extenuating circumstances."

On November 30, 1995, plaintiff submitted her first petition for readmission. The petition included a description of plaintiff's work experience since her dismissal but did not include any other documentation to support her request for early readmission. Plaintiff received a reply letter from Dr. Sahley, the Chairperson of the Graduate Admissions and Standards Committee ("committee"), informing her that her petition was placed on "hold" pending receipt of supporting documentation. The committee directed plaintiff to provide letters from the "professionals" cited in her petition addressing four specific aspects of plaintiff's clinical experience. Although Dr. Sahley's letter emphasized that the written documentation was "absolutely essential" to support plaintiff's petition for readmission, plaintiff did not comply with the request for documentation. On January 9, 1996, plaintiff was informed of the unanimous opinion of the committee to deny her petition for early readmission due to the lack of any evidence of "extreme extenuating circumstances."

On April 21, 1997, plaintiff submitted her second petition for readmission. In support of her petition, plaintiff cited her success in another education program, her passage of a national test, and her recovery from the stress that she believed led to her previous academic difficulties; however, the petition did not contain

any supporting documentation. On May 14, 1997, Dr. Sahley wrote to inform plaintiff that the review committee did not support her petition because of her "failure to provide any evidence that would counter the reasons for original dismissal." The letter also stated that the committee would not consider any future petitions for readmission.

Nevertheless, on April 1, 1998, plaintiff submitted a third petition for readmission. In a letter dated April 3, 1998, Dr. Benjamin Wallace, Chairperson the Department of Speech and Hearing, reiterated that plaintiff's dismissal was permanent and not appealable. After her petitions for readmission were denied, plaintiff unsuccessfully appealed to university officials, including the dean of the College of Arts and Sciences and defendant's president.

■■■ The Tenth District Court of Appeals has determined that the relationship between a student and the university is contractual in nature. "It is axiomatic that '* * * when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature.'" *Bleicher v. Univ. of Cincinnati College of Med.* (1992), 78 Ohio App.3d 302, 308, 604 N.E.2d 783, 787, quoting *Behrend v. State* (1977), 55 Ohio App.2d 135, 139, 9 O.O.3d 280, 282, 379 N.E.2d 617, 620. The terms of the contract between the university and the student are generally found in the college catalog and handbooks supplied to students. *Elliott v. Univ. of Cincinnati* (1999), 134 Ohio App.3d 203, 730 N.E.2d 996; *Smith v. Ohio State Univ.* (1990), 53 Ohio Misc.2d 11, 13, 557 N.E.2d 857, 859. In this case, the terms of plaintiff's contract with defendant are set forth in the Graduate College Bulletins ("bulletin") that were admitted into evidence as plaintiff's Exhibit Nos. 1 and 2.

The dismissal policy contained in the bulletin provides:

"Recommendation for continuance in and dismissal from a graduate program are functions of the graduate committee of the graduate degree program.

"In the following cases, however, the actions described below are required:

"Review by the graduate program committee to determine a student's ability to continue in graduate school [is] required upon receipt (in 100–899 level courses) of:

"a) one grade of F, *or*

"b) two grades of less than B, *or*

"c) two grades of NS.

"In each case the program recommendation for continuation or dismissal shall be forwarded to the Graduate Dean.

"Mandatory dismissal by the Graduate College occurs if a student:

"a) receives a second grade of F, *or*

"b) accumulates a total of 12 credit hours of less than B grades and has a cumulative grade-point average below 3.00." (Emphasis *sic.*)

Plaintiff asserts that defendant breached this policy by dismissing her before the committee had reviewed her record and before conditions for mandatory dismissal had occurred. The court disagrees.

When reviewing academic decisions, the standard of review is not whether a trial court would have decided the matter differently, but, rather, whether the faculty action was arbitrary and capricious. A trial court is required to defer to academic decisions of a university unless it is perceived that there existed " 'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.' " *Bleicher,* 78 Ohio App.3d at 308, 604 N.E.2d at 788, quoting *Regents of the Univ. of Mich. v. Ewing* (1985), 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523, 532.

The testimony and evidence presented at trial established that the decision to dismiss plaintiff was made conscientiously and with careful deliberation, based on a review of both her classroom and clinical performance. Plaintiff's academic problems were the result of poor test performance and her inability to apply her knowledge in clinical practice. Plaintiff was placed on academic warning for three quarters before she was dismissed. Dr. Metz, the former Chairperson of the Department of Speech and Hearing, counseled plaintiff after she received her first letter of academic warning.

Plaintiff was also counseled by her academic advisor and by Dr. Abkarian regarding the risk of enrolling in the clinical practicum while she was on academic warning. Plaintiff sought permission to enroll in the practicum despite the advice of her academic advisor. She also acknowledged that she was "taking academic risks" by registering for the practicum. In a letter to Dr. Abkarian, plaintiff stated: "This is my personal decision and I will not hold the department nor my advisor responsible for the consequences should I do [*sic*] not perform well in my classes and I be dismissed from graduate studies because of academic deficiencies." (Defendant's Exhibit L.) Plaintiff received a grade of "C" for her work in the clinical practicum and was subsequently dismissed based upon "a preponderance of negative reports from clinical supervisors, both internal and external, concerning [her] clinical skills." (Plaintiff's Exhibit No. 15.)

Although the graduate bulletin provides for a review by the graduate program committee to determine a student's ability to continue in graduate

school after the student has received two grades of less than "B," plaintiff was not dismissed until she had received four grades of less than "B" and her cumulative grade point average ("GPA") had dropped to 3.04. Dismissal is mandatory if a student has a cumulative GPA below 3.00. The court finds that defendant did not breach its contract with plaintiff by delaying the committee's review of plaintiff's academic record until after her dismissal rather than reviewing the record immediately following her second grade of less than "B." It is illogical for plaintiff to argue that she was somehow prejudiced by defendant's decisions to allow her to continue her studies after she was placed on academic probation and to grant her request to enroll in the clinical practicum. The court concludes that the decision to dismiss plaintiff was not arbitrary and that defendant did not breach its contract with plaintiff regarding the academic dismissal policy.

Plaintiff next contends that defendant breached the terms of its readmission policy by arbitrarily rejecting plaintiff's petitions for readmission. Plaintiff alleges that defendant's decisions to deny her petitions lacked professional judgment and were based upon preconceived and inaccurate views of her academic ability.

Defendant's graduate bulletin addresses the procedure for readmission following an academic dismissal. The bulletin provides: "The student who desires readmission must submit a petition to the chairperson of the department or the chairperson of the graduate program committee. The committee shall act on the petition and present the committee's recommendations to the Graduate College Petitions committee, whose decision shall be final."

Contrary to plaintiff's assertions, the court finds that plaintiff was afforded several opportunities to provide documents to support her petitions for readmission but failed to do so. As stated above, Dr. Sahley's letter responding to plaintiff's first petition outlined four areas that the Graduate Admissions and Standards Committee determined were "absolutely essential" for plaintiff to address before her petition would be considered. Plaintiff did not provide any additional supporting documentation or otherwise address the concerns of the committee. Likewise, the committee determined that plaintiff's second petition failed to counter the reasons for the original dismissal. Plaintiff was informed on May 14, 1997, that the committee's decision was final and that future petitions would not be considered.

Further, the court is not persuaded by plaintiff's assertion that defendant breached its contract by failing to investigate whether her clinical skills had improved. Defendant had no duty to contact plaintiff's coworkers or to conduct an investigation concerning her work experience following her dismissal. Rather,

the court finds that plaintiff was responsible for documenting any progress in her clinical ability and responding to the committee's specific requests for input from her professional coworkers or supervisors. The committee did receive input from the clinical faculty who instructed plaintiff and who unanimously agreed with the committee's decision to deny plaintiff's petition for readmission.

The court concludes that plaintiff has failed to establish that defendant acted either arbitrarily or without professional judgment in both dismissing her and denying her readmission. Consequently, judgment is rendered in favor of defendant.

## JUDGMENT ENTRY

This case was tried to the court on the sole issue of liability. The court has considered the evidence, and for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The Clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

*Judgment for defendant.*

EVERETT BURTON, J., retired, of the Scioto County Court of Common Pleas, sitting by assignment.