602 S.E.2d 59

**Charles D. CARTER, Appellant,**

v.

**The UNIVERSITY OF SOUTH CAROLINA, Respondent.**

**No. 3832.**

Court of Appeals of South Carolina.

Heard April 7, 2004.
Decided June 21, 2004.
Rehearing Denied Sept. 23, 2004.

Mary P. Miles, of West Columbia, for Appellant.

Daphne Dell Sipes, of Columbia, for Respondent.

BEATTY, J.:

Charles D. Carter appeals the trial court's grant of summary judgment in favor of the University of South Carolina in this action for declaratory judgment and injunctive relief. We affirm.

## FACTS

The College of Criminal Justice at the University of South Carolina granted provisional admission to Appellant Charles D. Carter in the spring of 1997. At the end of the semester, the program dismissed him for academic reasons. The dismissal letter, dated May 19, 1997, stated in part: "you will not be permitted to continue in the College of Criminal Justice." Carter appealed his dismissal, using the university's internal procedure. In the interim, Carter was also facing difficulties concerning a disciplinary, non-academic matter. Carter settled that disciplinary matter on September 8, 1997, by agreeing to be placed on "conduct probation" until December 1998. Carter also signed a form acknowledging that his "rights as a charged student" had been explained to him.

On September 18, 1997, after being placed on conduct probation and while his academic appeal was ongoing, Carter received a parking citation from university police. Carter and the officer then argued. As a result, the officer gave a "Notice of Policy Violation" to Carter. The Campus Judicial Board held a hearing on February 3, 1998, to address that incident. Carter did not attend the meeting, but the Board ruled that Carter was responsible for the violation and expelled him from the university. Carter appealed, arguing that he was not a student at the time of the incident. The university denied his appeal in a letter dated February 26, 1998, as a final disposition of the matter. The university had already denied Carter's academic appeal on October 6, 1997.

Carter sued the university in 2000, seeking injunctive relief[1] and a declaratory judgment that he was not a student in September of 1997. The trial judge granted summary judgment to the university, finding that Carter was a student

---

1. Apparently, the university had barred Carter from entering the campus, but the university has since agreed that Carter can enter university property.

within the description of the *USC Student Handbook and Policy Guide* ("the Handbook") and that Carter was therefore subject to the policies contained therein.

## ISSUES

I. Did the trial court err in ruling that Carter was a student?

II. Did the trial court err in ruling that the university police could write the citation even if Carter was not a student since Carter's behavior was harassing?

III. Did Carter properly and timely plead, establish, and raise a cognizable interest?

IV. Is Carter's request moot?

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and it is clear that the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP. "In determining whether . . . triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party." *Osborne ex rel. Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001). An appellate court reviews the granting of summary judgment under the same standard applied by the trial court. *George v. Fabri*, 345 S.C. 440, 451, 548 S.E.2d 868, 873 (2001).

## LAW/ANALYSIS

The university argues that Carter was still a student on the day of the incident for two reasons. First, Carter had signed a form acknowledging as much just one week earlier. Second, Carter created a "continuing student relationship" with the university by availing himself of the university's internal appellate procedures. Carter strenuously disagrees. He maintains that he was not a student on September 18, 1997, because the university had dismissed him in the spring of that year. Additionally, Carter contends that the phrase "continuing student relationship" is excessively vague and is therefore

unenforceable. We find that Carter was a student at the time of the incident.

On September 8, 1997, Carter signed a "Case Disposition Form" to settle his disciplinary appeal.[2] Carter admitted on that day that the university had explained to him his "rights as a charged *student* involved in the disciplinary process." (Emphasis added.) Carter agreed to be placed on conduct probation for fifteen months. Carter clearly envisioned being a student well into the future. We fail to detect any change in his status between the date of the signature and that of the parking incident. Having been a student on September 8, Carter cannot then argue that he was not a student on September 18. Nothing altered his status during that time.

We now turn to the university's second argument. The Handbook provides in pertinent part that "[p]ersons who are not officially enrolled for a particular term but who have a continuing student relationship with the University of South Carolina are considered 'students.' " [3] According to Carter, the phrase "continuing student relationship" is not sufficiently defined. Given the facts before us, that argument must necessarily fail.

The record shows that Carter was appealing his dismissal from the College of Criminal Justice in the spring and early summer of 1997. He wrote no fewer than three letters, requesting hearings, meetings, reconsideration. Even after the parking incident, Carter sought a meeting with the Faculty Academic Affairs Liaison Committee and admitted that he had "appealed [his dismissal] all the way to the president's office." There were also numerous letters to Carter from university personnel on the matter. The letters made clear that the appeal was "[i]n accordance with the policy of the Board of Trustees" and that "all [university] administrative

---

2. Carter was clearly a student in the spring of 1997, having enrolled and attended classes in the College of Criminal Justice. *See Delaureal v. Forster*, 816 So.2d 877, 880 (La.App.2002) (holding that "someone enrolled at [a university] and pursuing a [program of studies] ... has a primary relationship to [that university] as a student"); *The American Heritage Dictionary* 1208 (2d ed.1985) (defining a student as "[o]ne who attends a school, college, or university").

3. At oral argument, Carter conceded that he was bound by the Handbook.

(procedural) steps" were being followed. In responding to Carter's appeals, the university relied partially on its *Graduate Studies Bulletin,* a manual that addresses the rights of *students* attending the university.

When taken as a whole, the record shows that the academic appellate process was ongoing at the time of the parking incident. Carter's dismissal became final only on October 6, 1997, when the university's Board of Trustees informed Carter of its final decision. It is that letter which terminated Carter's status as a student.[4] *See Mason v. State ex rel. Bd. of Regents of Univ. of Okla.,* 23 P.3d 964, 970 (Okla.Civ.App. 2000) (holding that any contractual relationship which may exist between a university and a student is terminated when the student is expelled from the university and is "no longer party to any contract" with the university). That letter was sent *after* the parking incident. We therefore affirm the trial court's ruling that Carter had a continuing student relationship with the university on September 18, 1997.

Having so ruled, we need not address Carter's remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining that appellate courts need not review remaining issues when disposition of prior issues are dispositive).

---

4. It is commonly held that a contract exists between a university and its students. *See, e.g., R.J. Hendricks, II v. Clemson Univ.,* 353 S.C. 449, 461, 578 S.E.2d 711, 717 (2003) (ruling that "that some aspects of the student/university relationship are indeed contractual"); *Organiscak v. Cleveland State Univ.,* 116 Ohio Misc.2d 14, 762 N.E.2d 1078, 1081 (2001) ("It is axiomatic that when a student enrolls in a college or university, pays his tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature."). However, courts have disagreed about the extent to which student handbooks provide the terms of that contract. *Compare id.* ("The terms of the contract between the university and the student are generally found in the college catalog and handbooks supplied to students.") and *Cornett v. Miami Univ.,* 104 Ohio Misc.2d 41, 728 N.E.2d 471, 473 (2000) ("The terms of the contract between the university and the student are generally found in the college catalog and handbooks applied to students."), *with Pacella v. Tufts Univ. School of Dental Medicine,* 66 F.Supp.2d 234, 241 (D.Mass.1999) (ruling that the provisions of the handbook are not contractually binding on the university in part because the university could unilaterally modify them without notice).

## CONCLUSION

Based on the foregoing, the trial court's ruling is **AFFIRMED.**

HEARN, C.J., and HOWARD, J., concur.