[Cite as *Jones v. Columbus State Community College*, 2009-Ohio-7182.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

TITUS L. JONES

   Plaintiff

   v.

COLUMBUS STATE COMMUNITY COLLEGE

   Defendant

   Case No. 2008-09414-AD

Deputy Clerk Daniel R. Borchert

MEMORANDUM DECISION

{¶ 1}   Plaintiff, Titus Jones, a student formerly enrolled at defendant, Columbus State Community College (CSCC), filed this action alleging 1) he was defamed by CSCC personnel; 2) was unjustly terminated from enrollment at CSCC based on an allegation that he did not disclose a past criminal record; 3) did not receive credit for classes paid for and completed at CSCC; and 4) CSCC staff improperly made available his school record to a third party without obtaining prior authorization.  Plaintiff seeks damages in the amount of $2,500.00 claiming defendant acted maliciously causing him "much anguish."  The filing fee was paid.

{¶ 2}   Defendant specifically denied all allegations by plaintiff.  Defendant related CSCC staff "never made statements about (plaintiff) that were not true to the best of its knowledge."  Defendant also related plaintiff was provided with academic credit for class hours he attended in 2007.  Defendant denied plaintiff's allegation that he was terminated from enrollment at CSCC.  Defendant explained plaintiff "has been asked, and refused, to meet with its Student Code of Conduct Committee pursuant to its policy

before he is permitted to register for additional classes." Furthermore, defendant denied plaintiff's allegation that CSCC inappropriately shared plaintiff's student information with a third party. Defendant asserted CSCC's "actions toward (plaintiff) were at all times within the scope of its policies and procedures," and consequently, not actionable.

{¶ 3} Defendant submitted a "Timeline of Events" chronicling plaintiff's enrollment history at CSCC and events forming the basis of this claim. Defendant's evidence indicates plaintiff's "initial enrollment" at CSCC began on March 31, 2003. Two years later on March 31, 2005, plaintiff filed an application (copy submitted) for Federal Work Study (FWS) employment with the Legal Aid Society (LAS) on a form provided by CSCC. This application contained the following question:

{¶ 4} "Have you ever been convicted of a crime including misdemeanors, but excluding traffic violations? If so, explain including dates (use attachment if necessary)."

{¶ 5} Plaintiff did not respond to the criminal conviction question. Plaintiff noted on the application he graduated from the University of Toledo in 1997 and that he had been laid off from his job at the Volunteers of America. Defendant checked this information and discovered plaintiff's "employment with Volunteers of America had been terminated for dishonesty" and he had not graduated from the University of Toledo. Plaintiff signed the application giving CSCC permission to seek any copies of his arrest records available in Ohio. Plaintiff also signed the "Applicant's Certification and Agreement"[1] provision on the application granting CSCC authorization to make a

---

[1] Plaintiff signed and dated this authorization:
"APPLICANT'S CERTIFICATION AND AGREEMENT

Case No. 2006-03532-AD            - 3 -            MEMORANDUM DECISION

background check on him in regard to such things as work history, personal history, and criminal record. Defendant checked plaintiff's "criminal background which reported 2 felony convictions." Upon discovering the two felony convictions on plaintiff's record defendant informed plaintiff by letter (copy submitted) dated April 8, 2005 that he would not be placed in a work study position. Defendant advised plaintiff was also verbally informed that he was ineligible for FWS employment. On April 11, 2005, plaintiff had an appeal meeting regarding the employment ineligibility issue with CSCC Human Resources Department and the decision to deny employment was upheld. Defendant's

---

"I certify that the facts set forth in the above employment application are true and complete to the best of my knowledge. I also understand that if employed, falsified statements on this application and during the interview process shall be considered sufficient cause for dismissal. If I am hired, I agree that my employment is for no definite period of time unless negotiated by contract and may be terminated, with or without cause or notice, at any time and for any reason by the College. I understand that no representative of the College has the authority to enter into any employment agreement contrary to the foregoing, except an officer of the College in writing. I agree that when my employment is terminated by retirement or otherwise, I must return all the employer's property in my custody including, but not limited to, keys, manuals, books and equipment, before I am entitled to final payment of any amount due me on separation. YOU ARE HEREBY AUTHORIZED TO MAKE ANY INVESTIGATION OF MY PERSONAL HISTORY INCLUDING WORK HISTORY, POLICE BACKGROUND AND CONVICTION RECORD, AND CREDIT RECORD THROUGH ANY INDIVIDUAL, FORMER EMPLOYER, INVESTIGATIVE OR CREDIT AGENCIES, OR BUREAUS OF YOUR CHOICE. I understand that this information is confidential and I do hereby release Columbus State Community College, its public safety department and all individuals

Human Resources representative sent plaintiff a letter (copy submitted) that same day giving written notice of the decision to continue to deny employment based on the information received from plaintiff's criminal background check.

{¶ 6} On April 19, 2005, the CSCC Provost sent plaintiff written notice[2] regarding defendant's internal policy requirements for students with felony convictions to supply requested information. According to defendant's "Timeline" plaintiff, on April 25, 2005, submitted a time card for hours worked at LAS to the CSCC FWS Coordinator, who in turn informed plaintiff he was ineligible for FWS and would not be paid. In addition, the CSCC FWS Coordinator sent LAS a letter[3] (copy submitted) dated

---

connected therewith from all liability related to the release of these records."

[2] "It has been reported that you have been convicted of a felony. Should this be true, the college will need additional information from you regarding your legal past. A restriction has been placed on your file pending the receipt of this information. Please submit the following information:

"- Personal statement of why you want to attend Columbus State at this time. Please include statement regarding felony(ies) offense.

"- Type pf Felony(ies)

"- The specific nature of the felony charge(s)

"- Dates of all convictions.

"- Consequences of each felony conviction (sentence imposed).

"- Official arrest record from county of offense

"- Any misdemeanor crimes (excluding speeding or minor traffic offenses) of which you were convicted after the felony conviction.

"- Dates of those misdemeanor offenses (excluding speeding or minor traffic offenses).

"-Letter of recommendation (parole officer, employer, minister, etc.)

"Upon receipt of this letter you will have 30 calendar days, from the date printed on the letter, to provide the Admission Review Committee with requested information (please return all the information in one envelope). Mail the requested information to: Admissions Review Committee, Davidson Hall, Rm. 233, Columbus State Community College, 550 East Spring Street, Columbus, OH 43215. The committee will review the information you provided and you will be notified of their decision in writing. If the documentation is received less than 30 days prior to the start of the quarter you initially intend to enroll, your application may not be able to be processed for your start that quarter. If you do not respond within the 30 days, your application will not be able to be processed."

[3] Defendant provided this submission:

Case No. 2006-03532-AD          - 5 -          MEMORANDUM DECISION

April 26, 2005 advising that plaintiff "does not meet college employability guidelines" and consequently plaintiff could not receive FWS funds for working at LAS.  Defendant maintained the only communication from the CSCC FWS office to LAS in regard to plaintiff's employment status was through the April 26, 2005 letter.  Defendant reported plaintiff met with the CSCC Dean of Enrollment Services and the CSCC Director of Financial Aid on April 27, 2005 who both informed him they supported the decisions made by the CSCC FWS staff.  According to defendant, plaintiff responded to this

---

"April 26, 2005
"Legal Aid Society of Central Ohio
"40 West Gay Street
"Columbus, OH 43215
"Attn:  Marcia Paloff
"Dear Marcia:
    "Thank you for expressing an interest in Columbus State Community College Federal work-study candidate Titus Jones.  Unfortunately, he does not meet college employability guidelines; therefore we are unable to honor your request to place Titus Jones as a Federal Work Study  student at Legal Aid Society of Central Ohio.  If you should have additional questions or would like to further discuss the matter please do not hesitate to contact me.
    "Best regards,
    "Monika Wright
    "FWS Coordinator/Financial Aid Advisor
    "550 E. Spring St.
    "Columbus, OH 43215

information by indicating his desire to withdraw from CSCC.  Defendant denied plaintiff was told at this April 27, 2005 meeting that he would receive any payment through FWS for time worked at LAS.  Apparently, plaintiff scheduled a follow-up meeting, but cancelled on April 29, 2005.

{¶ 7}  In his complaint plaintiff asserted defendant "informed a third party of (his) school record without permission while participating in the work study program." Essentially, plaintiff contended this alleged act by defendant constituted the intentional infliction of emotional distress.  The court finds from reviewing the evidence produced that the stated information supplied by defendant to a third party, had to be the April 26, 2005 letter sent to LAS advising plaintiff "does not meet college employability guidelines" for FWS.  R.C. 2743.16(A), the statute of limitations section as applied to actions in this court provides:  "Civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties."  One of plaintiff's stated actions is based on information defendant provided in a letter drafted April 26, 2005.  Plaintiff filed this complaint on September 2, 2008.  Any cause of action based on the April 26, 2005 letter had to have been commenced in this court no later than April 26, 2007.  This part of plaintiff's claim was filed outside the appropriate statute of limitations.

{¶ 8}  Assuming plaintiff did timely file a claim grounded on the intentional infliction of emotional distress he would not prevail on the evidence presented.  Plaintiff has failed to prove the necessary elements to find liability for the intentional infliction of

---

"614-287-3622."

Case No. 2006-03532-AD          - 7 -          MEMORANDUM DECISION

emotion distress.

{¶ 9}  Under Ohio law, a plaintiff claiming the tort of intentional infliction of emotional distress must show:  "(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it."  *Burkes v. Stidham* (1995), 107 Ohio App. 3d 363, 375, 668 N.E. 2d 982.

{¶ 10} "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * *  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Yeager v. Local Union 20* (1983), 6 Ohio St. 3d, 369, 374-375, 6 OBR

421, 453 N.E. 2d 666.

{¶ 11} The Tenth District Court of Appeals has also addressed this issue and held that "to constitute extreme and outrageous behavior, the actions must go beyond all possible bounds of decency and can be considered as utterly intolerable in a civilized community." *Perry v. Speedway SuperAmerica, L.L.C.*, 2002-Ohio-1260. In the instant claim, no acts shown by defendant toward plaintiff constituted the intentional infliction of emotional distress.

{¶ 12} On June 14, 2005, plaintiff's grades for the 2005 Spring Quarter were posted. At this time, plaintiff had still not completed the felony review process requested in the April 19, 2005 letter sent by the CSCC Provost. Apparently, plaintiff had no further contact with CSCC until June 26, 2007 when he registered for classes there.

{¶ 13} On July 23, 2007, defendant sent plaintiff a certified letter[4] (copy

---

[4] "July 23, 2007

"Dear Mr. Jones:

"Your enrollment at Columbus State Community College has been placed on a 'pending status' as a result of your felony conviction record. You will need to provide the following information about your legal past so the College's Review Committee can determine your enrollment status:

"1. Personal Statement

"Complete the attached Personal Statement Form that provides additional information about your felony charge(s) and sentencing, the behaviors that led to these charges/convictions, any misdemeanor crimes you have been convicted of since your felony conviction(s), how you are trying to improve your life, and your academic plans at Columbus State. The Personal Statement Form must be signed and dated within the last 30 days.

"2. Arrest Record

"Submit an official arrest record from the county in which you were arrested for any felony as well as an official arrest record from the county in which you presently reside. The arrest record identifies the charges filed and the date(s) of conviction(s). If you have been convicted of any misdemeanor crimes since your felony conviction(s), please disclose this information on the Personal Statement Form (see #1 above.) Do not include speeding or minor traffic offenses. The arrest records must be dated within the

Case No. 2006-03532-AD        - 9 -        MEMORANDUM DECISION

submitted) to his last known address notifying him that his enrollment at CSCC had been placed on a "pending status" due to his felony conviction record. The letter contained specific instructions for plaintiff to supply information in order to have his

---

last 30 days.

"3. Letter of Recommendation

"Submit a letter of recommendation from someone, such as an employer, minister, counselor, or parole/probation officer, who can verify you are ready to attend college and successfully complete a college-level academic program. Letters of recommendation from family members/relatives are not acceptable. The letter of recommendation must be dated within the last 30 days.

"Mail the requested information to:

"Columbus State Community College

"Admissions Office

"Attn:  Admissions Review Committee

"Madison Hall, lower level

"550 East Spring Street

"Columbus, OH 43215

"Once all of the documents listed above are received, the Review Committee will review your information and notify you in writing of your next steps. Depending on your situation, you may be granted regular enrollment or you may be required to appear before the Committee for a personal interview to determine your enrollment status. Your enrollment status at the College will remain on a pending status until the review process is complete.

"If you have questions about the required documentation or the review process, please call (614) 287-2669 or 287-5527 for additional information. Thank you for your interest in pursuing your education goals at Columbus State.

"Sincerely,

"The Review Committee"

enrollment status changed. The July 23, 2007 letter was returned to CSCC on August 4, 2007 bearing the notation "RETURN TO SENDER ATTEMPTED NOT KNOWN UNABLE TO FORWARD."

{¶ 14} Defendant related plaintiff contacted the CSCC Dean of Enrollment Services on August 8, 2007 to attempt to "resolve a Summer 2007 scheduling issue." Defendant further related that "[d]uring the discussion, Dean told (plaintiff) again about the requirement that he participate in CSCC's felony review process before he could register for Fall classes." Defendant explained that at some time during the discussion plaintiff, "became disruptive and (CSCC) security was called, an incident report (copy submitted) was completed." Defendant asserted that at sometime during the interaction between plaintiff and CSCC Dean of Enrollment Services, Martin Maliwesky, plaintiff was provided with a copy of the July 23, 2007 undeliverable letter by Maliwesky.

{¶ 15} The incident report referencing plaintiff's behavior on August 8, 2007 was subsequently compiled by CSCC Police Department personnel and included witness statements from various CSCC employees who had interaction with plaintiff. No charges were ever filed against plaintiff and he was never detained in connection with any incident occurring at CSCC on August 8, 2007. The actual incident report was produced on October 12, 2007. Written witness statements were provided on August 9, 2007.

{¶ 16} In his complaint plaintiff alleged CSCC employees "slandered and libeled" him on August 8, 2007 "by fabricating an alleged act of disorderly conduct that was not committed by" him. Essentially, plaintiff advanced a claim of defamation by CSCC. Arguably, plaintiff's cause of action for defamation could have accrued on August 9,

2007 when various employees at CSCC drafted statements in connection with plaintiff's behavior at CSCC on that date. As has been previously stated, R.C. 2743.16(A), the statute of limitations for commencing actions in this court, states as follows: Subject to division (B) of this section, civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action, or *within any shorter period that is applicable to similar suits between private parties.*" (Emphasis added.)

{¶ 17} The Tenth District Court of Appeals has held that "R.C. 2743.16(A) applies to all actions against the state in the Ohio Court of Claims." *Talmon v. Ohio State Lottery Commission* (Oct. 6, 1992), Franklin App. No. 92AP-693, citing *Fellman v. Ohio Dept. of Commerce* (Sept. 29, 1992), No. 92AP-457. The Supreme Court of Ohio explained that "[t]he rationale underlying statutes of limitations is fourfold: to ensure fairness to defendant; to encourage prompt prosecution of causes of action; to suppress stale and fraudulent claims; and to avoid the inconvenience engendered by delay, specifically the difficulties of proof present in older cases." *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St. 3d 84, 88, 4 OBR 335, 447 N.E. 2d 727, citing *Harig v. Johns-Manville Products Corp.* (1978), 284 Md. 70, 75, 394 A. 2d 299

{¶ 18} R.C. 2743.16 specifies that shorter periods of limitation that apply to similar suits between private parties apply to civil actions against the state. R.C. 2305.11(A) states, in part that "[a]n action for libel, slander, malicious prosecution, or false imprisonment * * * shall be commenced within one year after the cause of action accrued." The court notes that the "statute of limitations begins to run when the allegedly defamatory words are first spoken" or published regardless of the aggrieved party's knowledge of them. *Miller v. Ohio Rehab. Serv. Comm.* (1997), 86 Ohio Misc. 2d 97, 100, 685 N.E. 2d 616." *Sabouri v. Ohio Dep't of Job & Family Servs.* (2001), 145 Ohio App. 3d 651, 654, 763 N.E. 2d 1238

{¶ 19} Plaintiff essentially maintained he was defamed when the CSCC Police Department compiled an incident report on October 12, 2007 relying on witness statements drafted on August 9, 2007. The incident report summarized an investigation into a "disorderly conduct-interfering with others" potential offense. For the purposes of this claim, the court shall determine the statements regarding plaintiff's behavior on August 8, 2007 were first published on October 12, 2007. Since plaintiff filed his complaint on September 2, 2008, his claim for defamation falls within the appropriate statute of limitations and plaintiff is entitled to have his defamation claim decided on the merits.

{¶ 20} In the October 12, 2007 incident report, CSCC employee, Amy Barends, provided a written narrative of her involvement with plaintiff on August 8, 2007. Barends recalled she "was contacted by a staff member in Madison Hall regarding a student (plaintiff) who would not comply with the directives given to him by office associates." Barends pointed out plaintiff was not at Madison Hall when she arrived there and was

Case No. 2006-03532-AD          - 13 -          MEMORANDUM DECISION

told he had left the building and was enroute to the CSCC President's office. Barends related when she went to the President's office she made contact with Valerie Wilson of Institutional Advancement, who provided information that plaintiff had apparently been at that office on August 6, 2007 and not August 8, 2007. Barends then returned to Madison Hall where she advised the three office associates who had interaction with plaintiff that witness statements from them would be needed. Barends reported she also contacted Dean of Enrollment Services, Martin Maliwesky, who apparently stated he became aware of prior situations with plaintiff after he had come to the office "on several occasions unannounced and disobeying the policies" of CSCC. Barends further reported she talked to an office assistant, Ms. Richey, who "encountered" plaintiff when he arrived at the lower level counter at Madison Hall asking her where Room 112 was located. According to Barends, Ms. Richey was unsure of the location of Room 112 but offered to find the location for plaintiff. Barends wrote "[a]t that moment he (plaintiff) barked back at her (Richie) 'I will find it myself' as he then proceeded to walk around the Admission Office after she advised him to come back." Apparently, according to Richey as reported by Barends, plaintiff then "entered the International Office reception area and stood in the lobby. She (Ms. Richey) advised him that Room 112 was not in this

location. He (plaintiff) angrily stated 'how would you know.' 'You didn't know where it was in the first place.'" Barends noted plaintiff continued to refuse to leave the area when requested by both Richey and another CSCC employee, Denise Flowers. At some time later, according to the Barends report, plaintiff "encountered" CSCC International Enrollment Services employee, Jennifer Benmaimoun. Plaintiff was still looking for Room 112 which was located near Benmaimoun's work station and when plaintiff found the room (Dean of Enrollment's office) he attempted to enter the office unannounced. Barends wrote plaintiff "stated (Dean of Enrollment) Marty Maliwesky was expecting him." Barends recorded plaintiff "threw his papers on (Benmaimoun's) desk and began to rant and rave about the issues he was having." According to Barends, plaintiff did not proceed into Maliwesky's office unannounced and instead seated himself near Benmaimoun's work station along the exterior wall after refusing a request to find a seat in the lobby area. Some time later, plaintiff met with Maliwesky without incident. Barends provided the following closing information: "Let it be noted this has been an ongoing distraction by Mr. Jones (plaintiff). He is under investigation for alleged criminal misconduct where as he could face possible charges. This investigation is not attached to this incident."

{¶ 21} As part of the incident report, defendant submitted four written witness statements from CSCC employees regarding their impressions when interacting with plaintiff in August 2007. Valerie A. Wilson, an employee at the CSCC Institutional Advancement Office, recalled she talked with plaintiff on Monday, August 6, 2007 when he came to that office to submit a letter to defendant's employee, Dr. Moeller, expressing his dissatisfaction with the CSCC "felony reporting process." Wilson related

Case No. 2006-03532-AD          - 15 -          MEMORANDUM DECISION

plaintiff talked to her at length "about his history with CSCC, including his charge that a college employee (not sure if current) revealed his felony history to a possible employer." Wilson advised plaintiff talked about other issues he had with CSCC and observed "[h]e was not abusive at all but he was very insistent about getting a reply from Dr. Moeller." Wilson recalled plaintiff "mentioned the possibility of suing the college for various violations of his rights." Wilson maintained she tried to provide assistance or direct plaintiff to other CSCC personnel to resolve his issues and upon taking his contact information he finally left the office. In describing her impressions of this meeting with plaintiff, Wilson stated, "I never felt physically threatened, but he was insistent, and went into way too much detail for the nature of his request."

{¶ 22} A second written statement in reference to her dealings with plaintiff on August 8, 2007, was provided by CSCC office associate at the International Enrollment Services, Jennifer Benmaimoun, who initially noted, "a man (plaintiff) very aggressively stormed into my office area" inquiring about the location of Room 112 (Dean of Enrollment Office). Benmaimoun recalled plaintiff discovered the location of Room 112 himself, which "is located directly across from the International Enrollment Services entrance." Benmaimoun reported plaintiff "said something to the effect of 'I am looking

for room 112 which is right there and I will just see myself in' and walked very aggressively in that direction." Benmaimoun recalled she responded to plaintiff's actions by asking him if he had an appointment to see the Dean of Enrollment Services and plaintiff replied "Marty Maliwesky should be expecting him." According to Benmaimoun, at this point plaintiff "rudely threw his papers on my desk and began to rant about whatever issue he was having." Benmaimoun related she requested plaintiff hold on to his papers and have a seat in the main lobby to wait to see Maliwesky, as that is standard appointment practice. Benmaimoun further related plaintiff "continued to be a distraction to myself and the students I was trying to assist." Benmaimoun offered the following description of the ensuing moments: "[s]hortly thereafter, Denise Flowers (CSCC Office Associate Admissions) came back to my area and firmly addressed him (plaintiff) stating that he was interfering with our work and would need to be seated in the main lobby." In response to this direction, according to Benmaimoun, plaintiff "took a seat along the exterior wall."

{¶ 23} Another written statement, signed by Denise Flowers, but apparently drafted by Patreshia Richey (part-time office associate in the CSCC Admissions Office), chronicles her (Richey's) dealings with plaintiff on August 8, 2007 in the CSCC Admissions Office. Richey pointed out she first observed plaintiff when he approached her work station at the admissions desk and asked where Room 112 was located and Richey responded "I told him that I was not sure, yet I would find out for him." Richey asserted plaintiff indicated he would find Room 112 himself and after walking about the Admissions Office he then entered the CSCC International Office area "where he stood in the lobby." Apparently, from her description, Richey followed plaintiff into the

Case No. 2006-03532-AD          - 17 -          MEMORANDUM DECISION

International Office lobby and informed him Room 112 was not located in the International Office. Richey recalled, in response to this information, plaintiff retorted, "[h]ow would you know. You didn't know where it was in the first place." Richey further recalled she then conversed with Jennifer Benmaimoun and advised her plaintiff "was looking for room 112, and was difficult to deal with." Richey offered the following narrative describing her last involvement in the August 8, 2007 incident: "[w]hen I proceeded to walk out of the International Office past Mr. Jones, he said that without my help he was able to find room 112, and that anytime he could receive service would be great. I told him that since he was in the wrong office, that he would have to wait until those that were in the correct place were served. I advised him to sit in the Admission lobby area, yet he acted as if he didn't hear me and refused to move. That is when I asked Denise (Flowers) to speak to Mr. Jones."

{¶ 24} A fourth statement from Denise Flowers was submitted. The following written statement is reproduced in its entirety:

{¶ 25} "I was approached by part-time office associate Patreshia (Richey) that a gentleman was being rude and wouldn't listen to her instructions on waiting to see Dean Marty. When I walked out of my office the student was standing in the international

area, where I approached him and asked him was he here to see the Dean he stated yes and looked me up and down.  I said he was in the wrong area and was blocking the international reception area for the students to be seen and that he should have a seat till the Dean was available for his appointment.  He didn't respond and look at me like I wasn't talking.  I again stated that he needed to have a seat and not be standing in the international waiting area.   He mumbled something then set down at the table in international totally disregarding my attempt to get him in the admission lobby waiting area.  He was rude, (and) very uncooperative.  Marty ask was it his appt. Mr. Jones? When I went to inform him of the situation."

{¶ 26} Defendant acted on the information provided by the investigation into plaintiff's conduct on August 8, 2007 and sent plaintiff a letter to his known listed address on January 30, 2008.  This letter from Dr. Janet M. Rogers, CSCC Dean of Student Life, notified plaintiff he was in violation of defendant's student conduct policy and was requested to appear before the CSCC Student Conduct Committee on February 29, 2008.  The letter from Dr. Rogers contained the following:

{¶ 27} "Based on information provided to me from the Columbus State Department of Public Safety, it appears that you are in violation of Columbus State's Student Conduct Policy No. 7-12(A), which prohibits students from engaging in 'any behavior which compromises the health, safety, peace, or property of any other student or college staff member or in any way interferes with the operation of the college.'  This includes:

{¶ 28} "(5) Disruptive or disorderly behavior including intoxication or indecent conduct and disruptive behavior in classes or on campus.

**{¶ 29}** "(6) Failure to obey the directive of an authorized college official in the performance of his/her duties.

**{¶ 30}** "Specifically, on August 08, 2007 at approximately 2:30 p.m., it is alleged that you would not comply with the directives of Admissions personnel located in Madison Hall. It is also alleged that you have demonstrated disruptive and/or disorderly conduct while visiting offices on campus. The incident report and witness statements are enclosed for your information.

**{¶ 31}** "As a result of the seriousness of the reported incident, I am requesting that you appear before the Student Conduct Committee on Friday, February 29, 2008 at 2:00 p.m. in Aquinas Hall, Room AQ116. Possible witnesses to appear include Investigator Lisa Karas, Officer Ralph Harris, Martin Maliwesky, Valerie Wilson, Amy Barends, Denise Flowers, Jennifer Benmaimoun, and Patreshia Richey.

**{¶ 32}** "Please note that a restriction has been placed on your file and you will not be able to conduct any registration activity, including adding or dropping classes or obtaining transcripts, pending resolution of this matter. Please carefully review the enclosed Student Handbook, pages 77-80, Student Code of Conduct Policy and Procedure No. 7-12."

{¶ 33} Defendant advised that plaintiff requested a postponement of his February 29, 2008 appearance before the Student Conduct Committee. Defendant apparently granted this request and pointed out plaintiff was sent a letter asking that he contact the officer to reschedule a hearing. There is no indication a hearing was ever held in regard to plaintiff's conduct on August 8, 2007.

{¶ 34} Based on the investigation conducted by CSCC Police Department personnel and the accompanying witness statements from CSCC employees regarding plaintiff's conduct and demeanor on August 8, 2007, plaintiff has alleged he has demonstrated the elements to prove actionable defamation. The Tenth District Court of Appeals has held that the four elements of the common-law action of defamation are:

{¶ 35} "(a) a false and defamatory statement concerning another;

{¶ 36} "(b) an unprivileged publication to a third party;

{¶ 37} "(c) fault amounting at least to negligence on the part of the publisher; and

{¶ 38} "(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Mallory v. Ohio Univ.*, 2001-Ohio-8762, quoting 3 Restatement of the Law 2d, Torts (1977), 155, Section 558. The court concludes plaintiff, in the instant action, has failed to offer any evidence to establish all elements of actionable defamation have been met in regard to the investigation of the August 8, 2007 incidents. There is insufficient proof to establish any of defendant's personnel made false and defamatory statements to a third party not affiliated with CSCC of the investigations regarding plaintiff's conduct. Additionally, there is no evidence defendant acted negligently toward plaintiff. Also, plaintiff has not shown the statements made about his conduct were defamatory in their context or any statements

Case No. 2006-03532-AD       - 21 -       MEMORANDUM DECISION

caused him harm.

{¶ 39} "Under Ohio law, expressions of opinion are generally protected under Section 11, Article 1, of the Ohio Constitution * * * Whether a statement constitutes fact or opinion is a question of law to be determined by the court." *Ferreri v. Plain Dealer Publ. Co.* (2001), 142 Ohio App. 3d 629, 639, 756 N.E. 2d 712. Upon review, the court finds that the alleged defamatory statements made by CSCC personnel constituted opinions. Therefore, plaintiff has failed to establish his claim referencing defamation in connection with defendant's investigation.

{¶ 40} Defendant's evidence shows that before plaintiff was requested to appear before the CSCC Student Conduct Committee, the felony review process regarding plaintiff's continued enrollment was completed. After a hearing on this subject, on or about November 8, 2007, plaintiff's enrollment was suspended for a year. Defendant noted that although plaintiff was told he could appeal the suspension, no appeal request was verified. Defendant subsequently sent plaintiff a transcript of the felony review hearing. Defendant stated the transcript "was returned by the post office because it had not been picked up." Plaintiff did eventually receive a recorded copy of the hearing transcript on or about February 5, 2008.

{¶ 41} In his complaint, plaintiff claimed defendant "terminated his enrollment without just cause (and) failed to provide (him) with credit for classes completed and paid for in the amount of $800.00. Plaintiff alleged these stated acts constituted a breach of contract. Plaintiff also claimed defendant was unjustly enriched; accepting tuition payment and then failing to grant credit for classes completed. Conversely, defendant maintained plaintiff was provided with academic credit with all classes he completed during the 2007 Summer Quarter. Defendant observed plaintiff "asked for a refund or academic credit for the class hours he attended in 2007." It does not appear from the documentation submitted that defendant accepted tuition payments from plaintiff and then failed to grant him credit for classes completed. Furthermore, defendant denied plaintiff was terminated from classes. Defendant explained plaintiff "has been asked, and refused to meet with (the CSCC) Student Code of Conduct Committee pursuant to its policy before he is permitted to register for additional classes." Defendant denied the actions taken by CSCC in connection with plaintiff's enrollment status constituted a breach of contract. Plaintiff did not respond to the assertions made by defendant and did not offer any evidence in rebuttal to defendant's evidence.

{¶ 42} It is well recognized that when a student enrolls in a college or university, pays his or her tuition and fees, and attends the school, the resulting relationship is construed as contractual in nature. *Behrend v. State* (1977), 55 Ohio App. 2d 135, 138, 9 O.O. 3d 280, 379 N.E. 2d 617. The terms of the contract between the university and the student are generally found in the college catalog and handbooks applied to students. *Embrey v. Central State University* (October 8, 1991), Franklin County App.

No. 90AP-1302; *Smith v. Ohio State Univ.* (1990), 53 Ohio Misc. 2d 11, 13, 557 N.E. 2d 857. However, where the contract permits, the parties may modify the terms by mutual agreement. *Ottery v. Bland* (1987), 42 Ohio App. 3d 85, 87, 536 N.E. 2d 651. In the instant claim, plaintiff has failed to produce any evidence to establish defendant did not perform under the contract. See *Revay v. Cleveland State Univ.*, Ct. of Cl. No. 2002-04003-AD, 2003-Ohio-101. Plaintiff has failed to show CSCC retained tuition money and did not issue him a grade for a course completed.

{¶ 43} Additionally, plaintiff has failed to prove defendant acted improperly in altering his enrollment status based on his failure to provide sufficient information regarding past felony convictions. Evidence has shown plaintiff was given a hearing and opportunity to participate in the felony review process. Evidence has shown that plaintiff was suspended from enrollment for one year pursuant to his hearing and he was notified of his right to appeal the decision to suspend his enrollment. A court is required to defer to academic decisions of a college unless it perceives "* * * such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not exercise professional judgment * * *." *Bleicher v. Univ. of Cincinnati* (1992), 78 Ohio App. 3d 302, 308, 604 N.E. 2d 783, quoting *Regents of*

*the Univ. of Mich. v. Ewing* (1985), 474 U.S. 214, 225, 88 L. Ed. 2d 523, 106 S. Ct. 507. The standard of review is not merely whether the court would have decided the matter differently but whether the university action was arbitrary and capricious. *Bleicher*. See, also, *Bd. Of Curators of Univ. of Mo. v. Horowitz* (1978), 435 U.S. 78, 91, 55 L. Ed. 2d 124, 98 S. Ct. 948. Plaintiff has failed to prove defendant acted in such a manner as to establish liability in handling the matters of plaintiff's enrollment status. Plaintiff's claim is denied.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

TITUS L. JONES

    Plaintiff

    v.

Case No. 2006-03532-AD          - 25 -          MEMORANDUM DECISION

Case No. 2006-03532-AD          - 25 -          MEMORANDUM DECISION

COLUMBUS STATE COMMUNITY COLLEGE

    Defendant

    Case No. 2008-09414-AD

Deputy Clerk Daniel R. Borchert

<u>ENTRY OF ADMINISTRATIVE DETERMINATION</u>

    Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of defendant.  Court costs are assessed against plaintiff.

_____
DANIEL R. BORCHERT
Deputy Clerk

Entry cc:

Beverly J. Corner
5918 Sharon Woods Blvd.
Suite 100
Columbus, Ohio 43229

Christa T. Metger
Assistant Attorney General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

RDK/laa
11/4
Filed 12/22/09
Sent to S.C. reporter 4/7/10